UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENYON CLINTON #364567,

       Plaintiff,                          Hon. Robert J. Jonker

v.                                            Case No. 1:18-cv-1114

PAUL DUBY, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Paul Duby's motion for summary judgment (ECF No. 64) and Defendants Robert Florian and Mary Nalbach's motion for summary judgment (ECF No. 72). 1 Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be granted and this action terminated.

## BACKGROUND

Plaintiff initiated this action on September 24, 2018, against: (1) Chaplain P. Duby; (2) Food Service Director Mary Nalbach; (3) Food Service Supervisor Robert Florian; and (4) Food Service Supervisor D. Landis. (ECF No. 1). The following allegations are contained in Plaintiff's complaint.

---

1 In the complaint, Defendant Robert Florian was misidentified as J. Florran, and Defendant Mary Nalbach was misidentified as N. Nalbach. (*See* ECF No. 72, PageID.460). The Court will use their proper names throughout this Report and Recommendation.

On November 25, 2008, Plaintiff received approval to participate in a "religious strict vegetarian diet." On January 24, 2017, Plaintiff was transferred to the Oaks Correctional Facility (ECF). The following day, Plaintiff notified food service and Chaplain Duby that he was approved to receive a religious vegan diet. Plaintiff did not receive his vegan diet, however. On February 5, 2017, Plaintiff was informed by a food service worker that he was not identified in "the computer" as being approved for a vegan diet.

On March 22, 2017, Chaplain Duby initiated a process to have Plaintiff's approval for vegan meals revoked. According to Duby, when a prisoner transfers to a new facility, he is responsible for properly notifying food service that he has been approved for a special religious menu. Duby alleged that because Plaintiff failed to properly request vegan meals after arriving at ECF, and was instead eating a non-vegan diet, his approval for vegan meals should be revoked. The Hearing Officer declined Chaplain Duby's request, however, and instead ordered that Duby counsel Plaintiff as to his obligations as a participant in the religious meal program. Plaintiff was counseled on March 27, 2017, after which time Plaintiff again began receiving vegan meals.

On July 5, 2017, Plaintiff was placed in segregation following a misconduct conviction. Following his placement in segregation, Plaintiff was not provided vegan meals. Plaintiff sent several kites to food service, but the situation was not corrected. On October 9, 2017, Plaintiff submitted a grievance regarding the matter. On October 14, 2017, Food Service Director Nalbach and Food Service Supervisor Florian responded to Plaintiff's grievance, noting that Plaintiff was "not on the current, updated

2

Religious Meal List that is approved by the Chaplain." In response, Plaintiff sent a kite to Chaplain Duby asking for assistance. On October 17, 2017, Duby responded that "food service was notified," and Plaintiff again began receiving his vegan meals.

Plaintiff alleges that Defendant Duby failed to notify food service that Plaintiff was approved to receive vegan meals. Plaintiff alleges that Defendants Nalbach, Florian, and Landis failed to place him on the "updated religious meal list." As a result, Plaintiff was denied his religious vegan meals "for over 90 days," which Plaintiff alleges violates his: (1) First Amendment right to freely practice his religion; (2) his Eighth Amendment right to be free from cruel and unusual punishment; and (3) his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

In an October 24, 2018, screening opinion, the Court dismissed: (1) Plaintiff's Eighth Amendment claims; (2) Plaintiff's First Amendment claims asserted against Defendants in their official capacity; and (3) Plaintiff's RLUIPA claims seeking monetary damages. (ECF No. 8). Thus, the only claims which survived initial screening were: (1) Plaintiff's First Amendment claims seeking damages against Defendants in their personal capacity; and (2) Plaintiff's RLUIPA claims for declaratory relief. (ECF No. 8).

Defendant Duby later moved for partial summary judgment on the ground that Plaintiff failed to properly exhaust his remaining claims. (ECF No. 20). The Court granted Defendant's motion, concluding that the only claims which Plaintiff properly exhausted against Defendant Duby concerned his allegations that he was denied his vegan meals between July 5, 2017, and October 17, 2017. (ECF No. 29-30).

Accordingly, the only claims remaining at this juncture are: (1) First Amendment and RLUIPA claims against Defendants Florian, Nalbach, and Landis concerning the time periods January 24, 2017, through March 27, 2017, and July 5, 2017, through October 17, 2017; and (2) First Amendment and RLUIPA claims against Defendant Duby concerning the time period July 5, 2017, through October 17, 2017. Defendants Duby, Florian, and Nalbach now move for summary judgment. Service has not yet been effected on Defendant Landis.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*,

4

440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodide*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

**I.  Defendant Duby**

Regarding Plaintiff's remaining First Amendment and RLUIPA claims concerning the time period July 5, 2017, through October 17, 2017, Defendant Duby argues that he is entitled to summary judgment. The Court agrees.

A. First Amendment Standard

It has long been recognized that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). To demonstrate that his right to freely practice his religion has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) Defendant's behavior infringes upon his practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001).

But liability cannot be based upon a theory of respondeat superior or vicarious liability. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998). Plaintiff "must show that a supervising officer did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Walters v. Stafford*, 317 Fed. Appx. 479, 486 (6th Cir., Mar. 18, 2009). Likewise, liability does not attach "based solely on the right to control employees, or simple awareness of employees' misconduct." *Stafford*, 317 Fed. Appx. at 486-87. Instead, Plaintiff must demonstrate *personal involvement* by a particular defendant. *See Bass*, 167 F.3d at 1048 (liability is not to be found in passive behavior or an alleged failure to act, rather liability must be based upon "active

6

unconstitutional behavior").

      B.      RLUIPA Standard

RLUIPA prohibits the government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). RLUIPA does not define the phrase "substantial burden." Nonetheless, courts have concluded that a "burden" on religious exercise is "substantial" only where such places on the individual "substantial pressure" to "modify his behavior and to violate his beliefs" or "effectively bars" the individual from exercising his religion. *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014); *see also*, *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise).

While there is authority indicating that an entity or governmental unit can be subject to vicarious liability under RLUIPA, *see, e.g., Layman Lessons, Inc. v. City of Millersville, Tenn.*, 636 F.Supp.2d 620, 643 (M.D. Tenn. 2008); the Court has not located authority even suggesting that individual defendants can be liable under RLUIPA based on a theory of vicarious liability. *See, e.g., Ciempa v. Jones*, 745 F.Supp.2d 1171, 1200 (N.D. Okla. 2010) ("[a]n otherwise non-culpable person cannot be held liable for his subordinate's violation of RLUIPA merely because of his or her status as a supervisor").

C.    Analysis

In support of his motion, Defendant Duby has submitted an affidavit in which he asserts the following. (ECF No. 65-2, PageID.339-44). Plaintiff was approved to receive vegan meals. During the relevant time period, Defendant regularly emailed to food services an updated list of the prisoners approved to receive vegan meals.[2] Defendant asserts that, with respect to the provision of special religious meals to prisoners, his role is limited to providing to food services the names of the prisoners approved to receive such.

In response to Defendant's motion for summary judgment, Plaintiff submitted no evidence. (ECF No. 67). While the Court previously concluded that Plaintiff's complaint was properly verified, (ECF No. 29-30), and, therefore, constitutes evidence in opposition to the present motion, the assertions therein do not advance Plaintiff's cause. Specifically, Plaintiff's complaint contains no evidence that contradicts or calls into question the evidence demonstrating that Defendant communicated to food services that Plaintiff was approved to receive vegan meals. Plaintiff likewise has no evidence contradicting Defendant's assertion that he plays no role in preparing or delivering special religious meals to prisoners. Accordingly, the undersigned recommends that as to Plaintiff's First Amendment and RLUIPA claims concerning the time period July 5, 2017, through October 17, 2017, Defendant Duby is entitled to summary judgment.

---

2 Copies of the emails in question are attached to Defendant's affidavit and such reflect that Plaintiff was approved to receive vegan meals. (ECF No. 65, PageID.347-414).

8

## II. Defendants Florian and Nalbach

Defendants advance several arguments in support of their request for relief. Only two merit discussion, however, and are addressed separately below.

### A. Exhaustion

As noted above, as to Defendants Florian and Nalbach, Plaintiff has asserted claims covering two distinct periods of time: (1) January 24, 2017, through March 27, 2017; and (2) July 5, 2017, through October 17, 2017. Defendants concede that Plaintiff has properly exhausted his remaining claims with respect to the latter time period, but argue that Plaintiff has failed to exhaust his claims as to the earlier time period. The Court agrees.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

9

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 provides that a prisoner, prior to submitting a grievance, attempt to resolve the issue with staff, unless prevented by circumstances beyond his or her control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ P (July 9, 2007). If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a grievance, but the prisoner must pursue such through all three steps of the grievance process as detailed in the Policy Directive. MDOC Policy Directive 03.02.130 ¶¶ R, V, BB, FF (July 9, 2007).

Defendants have submitted evidence that Plaintiff failed to pursue a prison grievance regarding his allegations that he was denied vegan meals between January 24, 2017, through March 27, 2017. (ECF No. 74-1, PageID.493-679). Plaintiff concedes that he failed to exhaust his claims concerning this time period and "agrees to dismissing the unexhausted claims dated from January 2017 through March 2017." (ECF No. 76, PageID.862). Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Florran and Nalbach, concerning the events from January 24, 2017, through March 27, 2017, be dismissed without prejudice for failure to properly exhaust all available administrative remedies.

B.   **Summary Judgment**

With respect to Plaintiff's claims concerning the time period July 5, 2017, through October 17, 2017, Defendants argue that they are entitled to summary judgment. The Court agrees.

In response to Defendants' motion, Plaintiff submitted a brief response that consists of nothing more than argument and unsupported legal conclusions. (ECF No. 76). While Plaintiff's response is purportedly a sworn statement, it does not contain any factual assertions based on first-hand knowledge or other evidence that demonstrates that Defendants violated Plaintiff's rights. For example, Plaintiff asserts that Defendants were "responsible for providing Plaintiff with his religious meal," but such is not supported by any evidence or documentary support. Plaintiff does reference the evidence supplied by Defendant Duby in support of his motion for summary judgment. But, while this evidence establishes that Plaintiff had been approved to receive vegan meals and such information was transmitted to food services, it does not establish that Defendants were aware of this information or were responsible for ensuring that Plaintiff received his vegan meals.

Likewise, during his deposition, Plaintiff could not identify any wrongful conduct on the part of Defendants Florran or Nalbach that supported his claims. (ECF No. 65-9, PageID.425-37). While the Court previously concluded that Plaintiff's complaint was properly verified, the assertions therein do not preclude summary judgment for Defendants. In his complaint, Plaintiff merely alleges that in response to his grievance alleging that he was not receiving vegan meals, Defendants informed Plaintiff that he

11

was not on the list to receive special religious meals. (ECF No. 1, PageID.6-7). Plaintiff has presented no evidence, however, that Defendants were aware, prior to the filing of this grievance, that Plaintiff was authorized to receive vegan meals or that they were responsible for ensuring that such were provided to Plaintiff.

In sum, Plaintiff has failed to present evidence creating a genuine factual dispute as to his First Amendment and RLUIPA claims against Defendants Nalbach and Florian. Despite being afforded ample time and opportunity to conduct discovery, (ECF No. 23, 31), Plaintiff was unable to discover facts and evidence sufficient to sustain his remaining claims. Accordingly, the undersigned recommends that as to Plaintiff's First Amendment and RLUIPA claims concerning the time period July 5, 2017, through October 17, 2017, Defendants Nalbach and Florian are entitled to summary judgment.

### III. Defendant Landis

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within ninety days after the filing of the complaint, "the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." If the plaintiff demonstrates good cause for such failure, however, the court "must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

On November 20, 2018, the Court ordered that Plaintiff's complaint be served on Defendants. (ECF No. 15). The Court's Order expressly informed Plaintiff that "the 90-day period for service set forth in [Rule] 4(m) shall run, starting with the date of this order." (*Id.*). On December 6, 2018, a Notice of Lawsuit and Request for Waiver of Service directed to Defendant Landis was delivered to the United States Marshal. No response to this Notice is documented on the docket. A second such Notice was delivered to the United States Marshal on July 25, 2019. This attempt at service on Defendant Landis was unsuccessful. (ECF No. 26).

On August 8, 2019, the Court ordered the Michigan Department of Corrections to provide the Court with the last known address for Defendant Landis. (ECF No. 28). On May 29, 2020, a third Notice of Lawsuit and Request for Waiver of Service directed to Defendant Landis was delivered to the United States Marshal. There is no indication in the docket that Defendant Landis ever received any of the aforementioned Notices or was otherwise properly served with a copy of the summons and complaint in this matter.

Almost two years has elapsed since the Court ordered that Plaintiff's complaint be served on Defendant Landis. During that time, Plaintiff has neither requested an extension of time to effect service on Defendant Landis nor requested the Court's assistance in locating Defendant. Considering Plaintiff's lack of diligence, the undersigned recommends that Plaintiff's claims against Defendant Landis be dismissed without prejudice for failure to timely effect service.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that: (1) Defendant Paul Duby's motion for summary judgment (ECF No. 64) be granted; (2) Defendants Robert Florian and Mary Nalbach's motion for summary judgment (ECF No. 72) be granted; (3) Plaintiff's claims against Defendant Landis be dismissed without prejudice for failure to timely effect service; and (4) this action be terminated. For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: July 8, 2020

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge